Opinion filed December 21, 2018



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00003-CR

_____

## SHAWN PINSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-44,548**

## MEMORANDUM OPINION

The jury convicted Shawn Pinson of murder and assessed his punishment at confinement for seventy years and a $10,000 fine. Appellant brings nine issues on appeal. In Appellant's first issue, he contends that the trial court erred when it denied his motion for new trial. In his second, third, fourth, and fifth issues, Appellant asserts that the trial court abused its discretion when it admitted certain pieces of evidence. In Appellant's sixth and seventh issues, he argues that trial counsel

provided ineffective assistance of counsel. In his eighth and ninth issues, Appellant challenges the sufficiency of the evidence. We affirm.

On the night of October 24, 2014, the police responded to a call about a possible deceased person at Appellant's residence in Ector County, Texas. When they arrived, they smelled the strong odor of a dead body emanating from the residence. Once inside, they discovered Daniel Searcy dead in the living room. Searcy's body was severely decomposed; someone had covered it with several towels and blankets and had wrapped it in a rug. Searcy's body lay face down; his arms and legs were tied behind his back in a hog-tied position. The police found no one else in the house. At the time that the police discovered the body, Appellant was in police custody for an unrelated drug offense.

Searcy had been missing for several days when the police discovered his body. He was last seen alive at Appellant's residence. The police investigation revealed a Facebook post that Searcy had posted, which showed a picture of himself in Appellant's home five days prior to his body being found. The date of the Facebook post was October 19, 2014. According to the police, the clothes on Searcy's dead body were the same clothes that Searcy wore in the picture. Additionally, Searcy's sister, Tamara Lynn Ingraham, testified that Appellant told her that Searcy had been at Appellant's house on October 19. She further testified that neither she nor Searcy's family had heard from Searcy since that day.

Sergeant James Patrick Chadwick was the officer in charge of the investigation that night. At trial, he testified about the evidence that the police discovered in Appellant's house. In Appellant's living room, the police found a fan blowing air up the fireplace chimney, and they also found a "Scentsy candle" near the body. Sergeant Chadwick testified that the fan was being used as a ventilation system to remove the odor from the house and that the candle was being used to mask the odor. Additionally, the police located four bottles of spray cleaners: two

2

in the living room and two in a bag in the kitchen. The contents of the bag in the kitchen also included latex gloves. The police discovered another latex glove underneath the couch near Searcy's body. Amber Miller, a forensic scientist, testified that Appellant and Searcy could not be excluded as possible contributors to the DNA profile found on the glove and that it was extremely likely that the glove contained DNA from both Appellant and Searcy.

In addition to this evidence, the police found several bleach marks on the carpet near the location of the body. The bleach marks were also on the towels, blankets, and rug that covered the body. The police later located an empty bottle of Clorox bleach inside the house. Further investigation revealed that Appellant had gone to Walmart to purchase cleaning supplies and bleach. In Appellant's bedroom, the police discovered a DVR for a home security recording system. They also observed that Appellant had video surveillance cameras inside and outside his home. Accordingly, Sergeant Chadwick obtained a search warrant to search the DVR for video footage. But when he examined the DVR, he found that the hard drive had been removed.

The record reflects that after October 19, Appellant began to live outside in his carport, which was attached to his house. Appellant's friend, Charles Christensen, testified that he checked on Appellant daily and was worried because Appellant would not go inside his house; nor would Appellant allow Christensen to go inside. According to Christensen, Appellant claimed that "the sewer pipe was broken." It was apparent to Christensen that Appellant was not leaving his carport and was going through a "hard time." He expressed that Appellant "was very upset" and not "in his right frame of mind." Moreover, Christensen testified that, although Appellant did not say why he was troubled, he did say that "he didn't want to live no more."

On Wednesday, October 22, 2014, Ingraham learned that Searcy was missing. When Ingraham learned that Searcy was missing, she and her mother got in Ingraham's vehicle and started to look for Searcy. During the search, they stopped at Appellant's house to ask him about Searcy. Appellant was in the carport. The record reflects that Christensen was with Appellant at that time. As Ingraham started to approach the front door, Appellant and Christensen walked over from the carport to meet her before she got close to the house. Ingraham identified herself as Searcy's sister and asked Appellant whether he had seen Searcy. According to Ingraham, Appellant told her that "he hadn't seen [Searcy] since Sunday" and that "[Searcy] left with somebody." Ingraham then gave Christensen her telephone number and left. Christensen testified that after Ingraham left, Appellant "got a little nervous" and very anxious. At some point after the weekend of October 19, Appellant contacted his friend, Cedric Rease. At trial, Rease testified that Appellant asked him for money. Appellant claimed that he was in trouble and that he needed to leave town.

Paul Charles Neatherlin, Jr., a former employee of Appellant, also testified at trial. Neatherlin testified that he accompanied Appellant to Walmart on more than one occasion that week.[1] According to Neatherlin, on one occasion, Appellant gave him money to purchase various items, including bleach and air freshener. After the second trip to Walmart, Neatherlin realized that Appellant was living in his carport and would not enter his home. When Neatherlin confronted Appellant about his behavior, Appellant started to cry. Neatherlin testified that Appellant said he was not going to lie to him anymore. Appellant then took Neatherlin inside the house and showed him Searcy's dead body. After they came back outside, Neatherlin

---

[1]The record reflects that Appellant and Neatherlin went to Walmart on Wednesday, October 22, 2014, and on Thursday, October 23, 2014.

4

asked Appellant whether he killed the person under the blankets. Appellant responded: "I killed him." Appellant also told Neatherlin that he killed Searcy because Searcy was stealing from Appellant.

Dr. Susan Roe, a deputy medical examiner, performed an autopsy of Searcy's body on October 27, 2014. At trial, Dr. Roe testified about Searcy's injuries and cause of death. She used Searcy's autopsy photographs to help the jury understand her testimony. According to Dr. Roe, the autopsy revealed a fracture on the right side of Searcy's skull. She described the size of the fracture as "medium." In addition to the skull fracture, the autopsy revealed multiple rib fractures on the back side of Searcy's rib cage and one rib fracture in the front. She testified that all these fractures were "complete fractures." Based on the autopsy, Dr. Roe concluded that "blunt force injuries" caused Searcy's death. She also testified about how these injuries could have occurred. Dr. Roe explained that Searcy's skull and rib fractures were consistent with someone "hitting or striking" Searcy with the hands or "kicking or stomping" Searcy with the feet.

We will first address Appellant's eighth and ninth issues concerning the sufficiency of evidence. In his eighth issue, Appellant argues that the trial court erred when it denied his motion for a directed verdict at the conclusion of the guilt/innocence phase of trial. In his ninth issue, Appellant argues that the evidence was not sufficient to convict him of murder.

A motion for directed verdict is reviewed under the same standard as the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). We therefore address both issues together.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence

in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of murder if he (1) "intentionally or knowingly causes the death of an individual" or (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (West 2011). The grand jury indicted Appellant under both subsections (1) and (2). Additionally, the indictment specifically alleged the manner in which Appellant caused Searcy's death, namely as follows: "by hitting or striking with his hand or an object unknown to the Grand Jury or by kicking or stomping with his foot the said DANIEL SEARCY, or by a manner and means unknown to the Grand Jury, or by a combination thereof." At trial, the jury found Appellant "guilty beyond a reasonable doubt of the offense of murder as charged in the indictment."

The linchpin of Appellant's argument on appeal is that he was not the person that committed the murder. In support, he argues that the evidence only established that he was aware of Searcy's body in his home; it did not prove that he actually committed the murder. Apart from Neatherlin's testimony about Appellant's alleged confession, which Appellant argues is not credible, he contends that there was no direct evidence that linked him to the murder. Therefore, Appellant contends that "the State failed to introduce evidence beyond a reasonable doubt that [he] actually murdered Searcy." We disagree.

The *Jackson* standard imbues to the factfinder the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as

the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326.

Moreover, in our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. In determining the sufficiency of the evidence, a reviewing court examines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused." *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

Here, the evidence shows that the police discovered Searcy's decomposed body in Appellant's living room. Prior to this discovery, Appellant confessed to Neatherlin that he had killed Searcy. After Searcy's death, Appellant began to live outside in his carport and refused to let anyone inside his house. During this time, Appellant was upset, nervous, and not "in his right frame of mind." He also took measures to conceal the odor of the body, lied to Searcy's sister about Searcy's whereabouts, and even contemplated leaving town. When we consider the cumulative force of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that

7

Appellant committed Searcy's murder. Accordingly, the evidence was sufficient to support Appellant's conviction. We overrule Appellant's eighth and ninth issues.

In Appellant's first issue, he contends that the trial court abused its discretion when it denied his motion for new trial.[2] In his motion, Appellant made three separate arguments. Specifically, he argued that he was entitled to a new trial based on (1) the State's use of false testimony, (2) newly discovered evidence, and (3) insufficient evidence. As discussed above, the evidence was sufficient to support Appellant's conviction for murder. Thus, our analysis of whether the trial court erred when it denied Appellant's motion for new trial will focus on Appellant's first and second arguments.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). The trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* This is a deferential standard of review that requires us to view the evidence in the light most favorable to the trial court's ruling. *Id.* In determining whether the trial court abused its discretion, we do not substitute our own judgment for that of the trial court, and we uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

As an initial matter, we note that Appellant's attempt to show (1) that the State used false testimony and (2) that he is entitled to a new trial based on newly discovered evidence rests solely on the affidavits attached to his motion—most notably, the affidavit of Deputy Mike Griffis. The Court of Criminal Appeals, however, has stated that an affidavit attached to a motion for new trial "is but a pleading that authorizes the introduction of supporting evidence. It is not evidence in itself." *Stephenson v. State*, 494 S.W.2d 900, 909–10 (Tex. Crim. App. 1973).

---

[2]The record reflects that Appellant's motion was overruled by operation of law.

To constitute evidence, "it needs to be introduced as such at the hearing on the motion." *Id.* Thus, before this court can rely on supporting affidavits, they must first be offered into evidence at a hearing, even if the motion for new trial implicates federal constitutional issues. *Rouse v. State*, 300 S.W.3d 754, 762–63 (Tex. Crim. App. 2009)

Here, the record indicates that the trial court did not hold a hearing on Appellant's motion for new trial. Further, Appellant did not request such a hearing. Because no hearing was held on Appellant's motion, Appellant has failed to provide any "evidence" of false testimony or newly discovered evidence. *See Montelongo v. State*, No. 08-16-00001-CR, 2018 WL 4178520, at *5 (Tex. App.—El Paso 2018, no pet.) (not designated for publication); *Jesse v. State*, No. 01-15-00181-CR, 2017 WL 769906, at *3 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (mem. op., not designated for publication); *Garcia v. State*, 291 S.W.3d 1, 7 (Tex. App.—Corpus Christi 2008, pet. ref'd). Consequently, nothing is presented for appellate review. *Royal v. State*, 659 S.W.2d 135, 135 (Tex. App.—Beaumont 1983, no pet.).

But even if we were to consider the affidavits in our review of Appellant's argument on the merits, we would conclude that the trial court did not abuse its discretion when it denied Appellant's motion for new trial.

The gravamen of Appellant's motion for new trial was the alleged false testimony of one of the State's witnesses, Neatherlin. At trial, Neatherlin testified that, after Appellant confessed to killing Searcy, Neatherlin went straight to his former girlfriend's house. Neatherlin testified that, while there, he reported the dead body to the police. In particular, he testified that he talked to Deputy Griffis and informed him about the body in Appellant's house.

In his motion, Appellant argued that Neatherlin's testimony that he talked to Deputy Griffis was false. In support, Appellant attached three affidavits, including an affidavit of Deputy Griffis, whose testimony Appellant contends was newly

discovered evidence.[3]  In the affidavit, Deputy Griffis refutes the fact that Neatherlin ever contacted him to report a dead body.  Specifically, he attested as follows: "I never received any telephone call from Mr. Paul Charles Neatherlin.  If I had received a report of a dead body I would have sent officers to the location immediately.  I would also have gone to the scene myself."

Appellant first argues that a new trial is warranted because the State used Neatherlin's false testimony.  The State's use of material false testimony to procure a conviction or punishment violates a defendant's constitutional right to due process, regardless of whether the State does so knowingly or unknowingly.  *See, e.g.*, *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011).  Generally, when a defendant asserts this violation on appeal, we review the record to determine (1) whether the State used false testimony and (2) whether the testimony was material.  *Yates v. State*, 171 S.W.3d 215, 220–22 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).  False testimony is material only if there is a "reasonable likelihood" that it affected the judgment of the jury.  *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014); *Ex parte Chavez*, 371 S.W.3d 200, 206–07 (Tex. Crim. App. 2012).

Even if we assume that the contested portion of Neatherlin's testimony—that he reported the dead body to Deputy Griffis—was false, the record does not support the conclusion that this testimony was material to the jury's verdict.  To support his argument that Neatherlin's false testimony was material, Appellant cites to *Ex parte Chabot*.  There, the State unknowingly presented false testimony of an accomplice

---

[3]Appellant's three affidavits are marked as Exhibits A, B, and C.  Appellant attached Exhibits A and B to his original motion for new trial; he attached Exhibit C to an addendum to his motion for new trial. Exhibit A is an affidavit of Matt L. Thomas, Appellant's trial counsel; Exhibit B is an affidavit of Robin McBride, Matt Thomas's private investigator; and Exhibit C is an affidavit of Deputy Griffis.  In their affidavits, Thomas and McBride both corroborate the statements made by Deputy Griffis in his affidavit.

witness. *Ex parte Chabot*, 300 S.W.3d 768, 770–71 (Tex. Crim. App. 2009). The accomplice witness testified that he was in another room when the defendant sexually assaulted and murdered the victim. *Id.* The jury subsequently convicted the defendant of murder and sexual assault based on this testimony. Post-conviction DNA evidence, however, exculpated the defendant and revealed that it was the accomplice witness who had committed the offense. *Id.* Because the State used the accomplice-witness's false testimony, which was critical to the defendant's conviction, the Court of Criminal Appeals held that the defendant's due process rights were violated. *See id.* at 772. In a subsequent decision, the court reasoned that the false testimony of the accomplice witness was "material because it provided the only direct evidence supporting the conviction." *Chavez*, 371 S.W.3d at 205.

In contrast, Neatherlin's false testimony in this case did not provide any direct evidence to support Appellant's conviction. Rather, Neatherlin's allegedly false testimony concerned his actions *after* Appellant confessed to killing Searcy. Although Neatherlin's testimony about Appellant's confession was critical to Appellant's conviction, Neatherlin's testimony about his conduct after he left Appellant's residence, specifically whether he contacted Deputy Griffis, does not directly impact the question of whether Appellant committed Searcy's murder. Nor does it negate the evidence at trial that Appellant confessed to the murder. Unlike in *Chabot*, the allegedly false testimony in this case was not critical to the jury's determination of guilt, and therefore is not material. *See Chabot*, 300 S.W.3d at 770.

Appellant also argues that a new trial is warranted based on newly discovered evidence. The code of criminal procedure gives an accused a right to a new trial where material evidence favorable to the accused has been discovered since trial. *See* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2018). To meet the statutory requirement for materiality, a defendant must satisfy the following four-part test: (1) the newly discovered evidence was unknown or unavailable to the movant at the

time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in another trial. *See Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014) (citing *Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002)). A defendant's failure to establish any of the essential requirements for a new trial based on newly discovered evidence warrants the trial court's denial of the motion. *Jones v. State*, 234 S.W.3d 151, 157 (Tex. App.—San Antonio 2007, no pet.).

Appellant fails to satisfy both the third and fourth prongs of the *Carsner* test. In general, newly discovered evidence that merely impeaches the witness's testimony will not be sufficient to grant a new trial. *Carsner*, 444 S.W.3d at 3. The State argues that Appellant's newly discovered evidence (i.e., Deputy Griffis's affidavit, in which he states that Neatherlin did not contact him to report the victim's dead body) "would have been merely impeachment" and thus not sufficient to support a new trial. We agree. In his motion for new trial, Appellant argued that this newly discovered evidence bears "directly upon the credibility of Paul Neatherlin's testimony." Additionally, on appeal, Appellant argues that in light of Neatherlin's false testimony, a new trial is warranted because "Neatherlin's credibility . . . was of crucial importance in the State's case against [him]." Thus, to the extent that Appellant argues that he is entitled to a new trial because the newly discovered evidence will impeach Neatherlin's testimony, it fails to satisfy the third prong of the *Carsner* test.

We note that even if the newly discovered evidence impeaches a witness, the evidence may still warrant a new trial if it is "material and competent independent of its impeaching tendency." *Hale v. State*, 51 S.W.2d 611, 613 (Tex. Crim. App. 1932); *see also Chabot*, 300 S.W.3d at 770. This standard for materiality is

encompassed in the fourth prong of the *Carsner* test. *Cf. Garcia v. State*, No. 13-05-00097-CR, 2012 WL 987340, at *4 (Tex. App.—Corpus Christi Mar. 22, 2012, pet. ref'd) (mem. op., not designated for publication). Under the fourth prong, if the new evidence is probably true and will probably bring about a different result in a new trial, independent of impeachment, then the evidence is material and not merely impeachment. *See Parker v. State*, No. 13-13-00128-CR, 2014 WL 6085584, at *2–3 (Tex. App.—Corpus Christi Nov. 13, 2014, pet. ref'd) (mem. op., not designated for publication).

Appellant argues that "[t]his newly discovered evidence was material because it called into question when law enforcement officials were first placed on notice of Searcy's dead body." Moreover, he argues broadly that such evidence "established the falsehood of Neatherlin's testimony." As discussed above, however, we cannot conclude that Neatherlin's testimony, even if false, would likely have produced a different outcome, independent of its impeaching tendency. Further, the question of when the police first became aware of the dead body is not material to the issue of whether Appellant caused Searcy's death. Even if Neatherlin did not contact Deputy Griffis after Appellant confessed, this new evidence would not contradict Neatherlin's testimony that Appellant confessed that he killed Searcy. Instead, the evidence would merely serve to impeach Neatherlin's testimony in general. Thus, because Appellant's newly discovered evidence is not likely to bring about a different result in a new trial, it also fails to satisfy the fourth prong of the *Carsner* test.

Accordingly, we cannot say that the trial court's denial of Appellant's motion for new trial was outside the zone of reasonable disagreement. Because the record fails to establish that Neatherlin's allegedly false testimony or the newly discovered evidence was material to Appellant's conviction, we hold that the trial court did not

13

abuse its discretion when it denied the motion for new trial. We overrule Appellant's first issue.

In Appellant's second, third, fourth, and fifth issues, Appellant challenges the trial court's decision to admit various pieces of evidence. We review a trial court's evidentiary ruling under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.*; *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). We address Appellant's four evidentiary issues in turn.

In Appellant's second issue, he contends that the trial court erred when it admitted the following pieces of evidence: (1) a photograph of Searcy's decomposed body at the crime scene—State's Exhibit No. 78; (2) photographs of Searcy's autopsy—State's Exhibit Nos. 171–76, 180–85; and (3) photographs of Appellant's bedroom—State's Exhibit Nos. 126–27, 134, 137, 139, 140–41, 146, and 154–55. Appellant argues that these photographs were irrelevant and unfairly prejudicial in violation of Rules 402 and 403 of the Texas Rules of Evidence. He also argues that the admission of the bedroom photographs violated Rule 404.

Specifically, with respect to State's Exhibit No. 78 and the autopsy photographs, Appellant argues that they were not relevant to the issue of whether he intentionally or knowingly killed Searcy. In addition, given the decomposition of the victim's body, Appellant argues that the photographs were "extremely graphic" and "gruesome" and that the photographs only served to inflame the jury and thus resulted in unfair prejudice. We disagree.

The admissibility of photographs is within the sound discretion of the trial judge. *Shuffield v. State*, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006). To be

admissible, the evidence must be relevant. TEX. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Shuffield*, 189 S.W.3d at 787; TEX. R. EVID. 401. Crime-scene photographs that depict the location of the body are generally relevant in a murder trial. *See Shuffield*, 189 S.W.3d at 787. Additionally, autopsy photographs are generally admissible as relevant when the pictorial evidence will help the jury to understand the verbal testimony of the medical examiner. *See generally Harris v. State*, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983).

We conclude that State's Exhibit No. 78 and the autopsy photographs were relevant to the issue of whether Appellant intentionally or knowingly killed Searcy. Appellant argues that he was not the person that killed Searcy. Because State's Exhibit No. 78 shows the location of the body at the crime scene, which was the living room of Appellant's residence, the photograph makes it more likely—than it would be without the photograph—that Appellant killed Searcy. Thus, State's Exhibit No. 78 was relevant during the guilt phase of the trial.

Additionally, the autopsy photographs were relevant because they helped the jury understand the medical examiner's testimony about the autopsy. The photographs helped Dr. Roe explain the level of decomposition on Searcy's body and the complex manner in which he was tied. Dr. Roe also testified about the injuries depicted in the photographs. She used the photographs to describe the severity and location of the injuries, and how the injuries could have occurred. Therefore, the autopsy photographs were relevant and helpful to the jury in making its decision.

Even if the evidence is relevant, however, the trial court may exclude the evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence

15

and carries a presumption that relevant evidence is more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991). Evidence is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). When we review a trial court's determination under Rule 403, we reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392). An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (citing *Montgomery*, 310 S.W.2d at 389–90); *Shuffield*, 189 S.W.3d at 787.

In addition to these four factors, in the context of photographic evidence specifically, we also consider the following: the number of photographs, the size of the photograph, whether it is in color or black and white, the detail shown in the photograph, whether the photograph is gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to a defendant's detriment. *Shuffield*, 189 S.W.3d at 787; *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). Generally, photographs are admissible if testimony about the matters that the photographs depict would be admissible and if the probative value is not substantially outweighed by the prejudicial effect. *Threadgill v. State*, 146 S.W.3d 654, 671 (Tex. Crim. App. 2004). Additionally, a trial court does not err merely because it admits gruesome photographs into evidence. *Sonnier*, 913 S.W.3d at 519; *Luna v. State*, 264 S.W.3d 821, 829 (Tex. App.—Eastland 2008, no pet.).

We conclude that the admission of State's Exhibit No. 78 and the autopsy photographs did not run afoul of Rule 403. While State's Exhibit No. 78 and the autopsy photographs may be gruesome, they "depict nothing more than the reality of the brutal crime committed." *Sonnier*, 913 S.W.2d at 519.

Sergeant Chadwick testified that State's Exhibit No. 78 was a fair and accurate depiction of Searcy's body after the police uncovered his body and processed it for transport. The appellate record contains a colored digital copy of State's Exhibit No. 78. Nothing in the record indicates the size of the photograph that was admitted into evidence. The photograph is taken from a high vantage point and is not particularly detailed. In the photograph, Searcy is fully clothed, but his arms are exposed. He is lying down on his stomach, and his legs and arms are tied behind his back in a hog-tied position. The photograph shows the decomposition of his arms and of the left side of his face; the right side of his face is not depicted. Moreover, because the police only pulled back the blankets and removed the towels to expose Searcy's body, it was not altered in a manner that detrimentally affected Appellant.

The autopsy photographs show the victim's body during the autopsy. There are twelve colored autopsy photographs in total. As with State's Exhibit No. 78, the appellate record contains colored digital copies of the autopsy photographs and does not reflect the size of the originals. The photographs were not notably duplicative or cumulative. The record reflects that the State used no more photographs than were necessary for Dr. Roe to adequately explain her testimony. Together, they show detailed close-ups of the victim's injuries, areas of decomposition, and how the victim was hog-tied. Although some of the photographs reflect alterations of the victim's body due to the autopsy procedures, specifically images of Searcy's skull and rib cage, Dr. Roe explained that the alterations were made by her to examine Searcy's internal injuries; thus, their presentation did not detrimentally affect Appellant. *See generally Salazar v. State*, 38 S.W.3d 141, 151–52 (Tex. Crim. App.

17

2001) (discussing that when the body is altered during the autopsy to examine and portray the extent of internal injuries, there is no danger that the jury would attribute the alteration to the defendant).

Together, State's Exhibit No. 78 and the autopsy photographs were probative of whether Appellant killed Searcy and of the injuries that he received. They were also necessary for the State to develop its case and did not take an inordinate amount of time to present. We have reviewed the photographs marked as State's Exhibit Nos. 78, 171 through 176, and 180 through 185, and we cannot conclude that they are so disturbing that a juror of normal sensitivity would not be able to rationally decide the issues involved in the case after viewing the photographs. *See Alvarado v. State*, 912 S.W.2d 199, 212 (Tex. Crim. App. 1995). Therefore, we hold that the trial court did not abuse its discretion when it admitted State's Exhibit No. 78 and the autopsy photographs over Appellant's Rules 402 and 403 objections.

Appellant also argues that the bedroom photographs, which all depicted graffiti and other markings on the door, walls, and ceiling, were irrelevant and unfairly prejudicial. He further contends that their admission constituted an impermissible attack on his character. The State responds that Appellant's bedroom was a "crime scene." Although the police did not find the body in the bedroom, the State asserts that the police did find a DVR that was a part of Appellant's home security system. Because the hard drive was removed from the DVR, the State argues that this evidence suggests Appellant's consciousness of guilt. However, only two of the exhibits to which Appellant objects, namely State's Exhibit Nos. 127 and 140, show the DVR. The remaining bedroom photographs—marked as State's Exhibit Nos. 126, 134, 137, 139, 141, 146, 154, and 155—only show the graffiti and other markings.

Even if we assume, without deciding, that the admission of the bedroom photographs constitutes error, such admission did not harm Appellant. The

18

erroneous admission of evidence generally constitutes nonconstitutional error. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We must disregard a nonconstitutional error if it does not affect substantial rights. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla*, 78 S.W.3d at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.*

Sergeant Chadwick testified about the bedroom photographs at trial. Although he pointed out the graffiti on the walls, his testimony about the markings was brief and nonspecific. Instead, he focused more on the evidence found within the bedroom, including the DVR. The State did not emphasize at trial the graffiti on the walls or spend an inordinate amount of time introducing such photographs. More importantly, the State presented ample evidence of Appellant's guilt. In particular, the evidence established that Searcy's body was found in Appellant's living room and that Appellant confessed that he killed Searcy. In light of such evidence, we have fair assurance that the admission of the photographs of Appellant's bedroom did not influence the jury's verdict, or influenced the jury only slightly. We overrule Appellant's second issue.

In Appellant's third issue, he contends that the trial court abused its discretion when it admitted extraneous evidence of his illegal drug use on or around the date

of the murder. In particular, Appellant argues that such evidence is inadmissible under Article 38.36 of the Texas Code of Criminal Procedure because the State failed to provide notice of its intent to use this evidence under Rule 404(b) of the Texas Rules of Evidence. The State responds that, although it did not provide notice of its intent to introduce evidence of Appellant's general drug use, the admission of such evidence was harmless error.

We review the trial court's decision to admit evidence of extraneous bad acts for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Article 38.36(a) provides: "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." CRIM. PROC. art. 38.36(a). Nevertheless, evidence admissible under Article 38.36(a) remains subject to Rule 403 and Rule 404(b) of the Texas Rules of Evidence. *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999). In particular, such evidence is subject to the notice requirement of Rule 404(b). *See Umoja v. State*, 965 S.W.2d 3, 7 (Tex. App.—Fort Worth 1997, no pet.) (Article 38.36(a) does not abrogate the State's obligation to provide notice to the accused of its intent to introduce extraneous offense evidence under Rule 404(b)). In relevant part, Rule 404(b) provides that, "On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." TEX. R. EVID. 404(b).

Even if we assume, without deciding, that the trial court erred when it permitted the State to introduce evidence of Appellant's drug use, we conclude that the error, if any, did not harm Appellant. As we explained in our disposition of

20

Appellant's second issue, the erroneous admission of evidence generally constitutes nonconstitutional error. *See Motilla*, 78 S.W.3d at 355. We will disregard such error unless it affects Appellant's substantial rights. TEX. R. APP. P. 44.2(b).

The purpose of the Rule 404(b) notice requirement is to prevent surprise. *Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005). Thus, if the trial court erred when it admitted evidence due to lack of notice, we must determine whether the record reflects harm to Appellant in terms of surprise. *See Roethel v. State*, 80 S.W.3d 276, 281–82 (Tex. App.—Austin 2002, no pet.). A defendant's substantial rights are not affected "if the defendant was not surprised by the evidence." *See Hernandez*, 176 S.W.3d at 825; *see also Roethel*, 80 S.W.3d at 281–82. In other words, "we must analyze how the deficiency of the notice affected [the defendant's] ability to prepare for the evidence." *Hernandez*, 176 S.W.3d at 825 (quoting *Roethel*, 80 S.W.3d at 281–82).

Here, there is no indication that Appellant was surprised by the State's desire to introduce evidence of his illegal drug use on or around the date of the murder. Indeed, had there been legitimate surprise that required Appellant to reevaluate his trial strategy, Appellant could have requested a continuance. *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). The record, however, does not reflect that Appellant moved for a continuance. Additionally, Appellant does not argue that he was unable to prepare his defense because of the State's failure to give him notice. Therefore, we conclude that any error in admitting evidence of Appellant's drug use without the requisite notice was harmless. We overrule Appellant's third issue.

In Appellant's fourth issue, he contends that the trial court erred when it admitted the following pieces of evidence: (1) a Walmart customer receipt, marked as State's Exhibit No. 7; and (2) four computer-generated receipts from Walmart, marked as State's Exhibit Nos. 201 through 204.

Appellant first asserts that the Walmart customer receipt (Exhibit No. 7) was not relevant to the issue of whether Appellant murdered Searcy. The State introduced the customer receipt through Sergeant Chadwick. Sergeant Chadwick testified that he obtained information that Appellant and Neatherlin had visited Walmart to purchase cleaning supplies, among other items. Jodi Cash, a crime scene technician, located the customer receipt in Neatherlin's vehicle. Appellant argues that the customer receipt is not relevant for two reasons. First, he argues that "the State failed to establish the customer receipt was relevant to the time period in question." Second, he argues that "[t]he customer receipt itself does not reflect the purchase of any cleaning supplies."

Under Rule 402 of the Texas Rules of Evidence, evidence must be relevant to be admissible. *See* TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401.

We conclude that the evidence was relevant to prove a theory of the State's case. Specifically, that Appellant and Neatherlin went to Walmart on multiple occasions, and on one of those occasions, they purchased cleaning supplies, including bleach. First, the customer receipt appears to be dated October 23, 2014, five days after the murder, as alleged by the State. Thus, it was relevant to the time period in question. Second, although the customer receipt did not indicate the purchase of cleaning supplies, the customer receipt has some tendency to make it more probable than it would be without the evidence that Appellant and Neatherlin did make trips to Walmart after the date of the murder. Accordingly, the trial court did not abuse its discretion when it admitted the customer receipt over Appellant's relevancy objection.

Appellant next asserts that the court erred when it admitted the four computer-generated Walmart receipts, marked as State's Exhibit Nos. 201 through 204.

Specifically, he argues that the computer-generated receipts constitute hearsay and that the State failed to assert a proper hearsay exception. Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by statute, the Rules of Evidence, or other rules prescribed under statutory authority. TEX. R. EVID. 802. Once the opponent of hearsay evidence makes the proper objection, the burden shifts to the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character. *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008).

Assuming without deciding that the trial court's ruling was erroneous, we must determine whether it amounts to reversible error. It is well established that the "improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial." *Thomas v. State*, 1 S.W.3d 138, 142 (Tex. App.—Texarkana 1999, pet. ref'd) (citing *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991)). Thus, if there is additional evidence that establishes the same or similar facts as the computer receipts, we must find the error harmless. *See id.*

At trial, the State offered the computer-generated receipts through Joy Jordan, an asset protection associate at Walmart. Jordan testified that State's Exhibit No. 201 documented a purchase of a prepaid cellphone on October 22, 2014; State's Exhibit No. 202 indicated the return of the same phone on October 23, 2014; and State's Exhibit No. 204 established that the phone was shipped back to Walmart's distribution center on October 26, 2014. Further, Jordan testified that State's Exhibit No. 203 showed the purchase of four items shortly after the phone was returned on October 23, including a printer, a Pedialyte drink, deodorant, and supplements.

These same or similar facts were established by other properly admitted evidence at trial, to which Appellant did not object. Specifically, Neatherlin later testified that he purchased and returned a cell phone at Walmart. Additionally, through Jordan, the State introduced video surveillance footage of the Walmart transaction documented in State's Exhibit No. 203. The video showed the purchase of the items outlined in the computer-generated receipt, namely the printer, drink, deodorant, and supplements. Therefore, even if we assume that the computer-generated receipts constituted inadmissible hearsay, we conclude that their admission was harmless error. We overrule Appellant's fourth issue.

In Appellant's fifth issue, he contends that the trial court erred when it admitted an anthropology report—authored by a forensic anthropologist, Dr. Dana Austin—through the medical examiner, Dr. Susan Roe.[4] Specifically, Appellant asserts that the anthropology report, which was attached to the autopsy report, was inadmissible hearsay. *See* TEX. R. EVID. 801(d).

At trial, Dr. Roe testified that she observed red discoloration on the muscles within the right side of Searcy's neck. She removed the hyoid bone and thyroid cartilage from within the neck and asked Dr. Austin to examine the structures for trauma. Dr. Austin examined the structures and authored a separate report about her findings (the anthropology report). The State did not call Dr. Austin to testify. Rather, the State asked Dr. Roe to explain what Dr. Austin found. Over Appellant's hearsay objection, Dr. Roe testified about the contents of the anthropology report. She testified that based on the report, a part of the victim's thyroid cartilage was fractured. But, according to the report, she testified that the age of the fracture could not be determined. At the conclusion of Dr. Roe's direct examination, and over

---

[4]Dr. Roe used the anthropology report to make her overall determination about the victim's cause of death. She also referenced the anthropology report in her autopsy report and attached a copy of the anthropology report to the autopsy report.

Appellant's second hearsay objection, the State then introduced Dr. Roe's autopsy report into evidence, which included Dr. Austin's anthropology report as an attachment.

Even if we assume that the trial court erred when it overruled Appellant's objection, the error was harmless. As mentioned above, the erroneous admission of evidence is nonconstitutional error. *See Motilla*, 78 S.W.3d at 355. Accordingly, we will disregard such error unless it affects Appellant's substantial rights. TEX. R. APP. P. 44.2(b).

Although Dr. Roe testified about the conclusions of Dr. Austin's report, namely that the victim's thyroid cartilage was fractured, testimony about the fracture was brief and neither Dr. Roe nor the State emphasized the thyroid fracture. Indeed, the record reflects that Dr. Roe did not fully embrace the thyroid injury as a cause of the victim's death. Although Dr. Roe concluded that "[m]ultiple blunt force injuries" caused Searcy's death, including (1) a skull fracture, (2) left rib fractures, and (3) a fracture of the thyroid cartilage, she explained to the jury that the age of the thyroid fracture could not be determined.[5] She made it clear that this meant that the fracture may not have resulted from the incident in question. On the other hand, Dr. Roe testified unequivocally that the skull fracture did contribute to the victim's death because that fracture showed no evidence of healing. Rather than focus on the thyroid fracture, Dr. Roe continued to testify about the skull fracture and rib fractures as the main causes of Searcy's death. Additionally, during closing arguments, the State did not attempt to argue that the thyroid fracture caused the victim's death, but focused on the skull fracture and rib fractures instead. Accordingly, we have fair

---

[5]Dr. Roe's autopsy report also contains a notation of "age undetermined" next to the finding that the victim's thyroid cartilage was fractured.

assurance that any error concerning the anthropology report did not influence the jury or only influenced the jury slightly. We overrule Appellant's fifth issue.

In Appellant's sixth and seventh issues, Appellant contends that he received ineffective assistance of counsel. We review a claim of ineffective assistance of counsel under the *Strickland* standard, which is a two-part analysis that includes a performance prong and a prejudice prong. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). For the performance prong, Appellant must show that trial counsel's performance was deficient. *Id.* For the prejudice prong, Appellant must show that there is a reasonable probability that the outcome would have differed but for trial counsel's errors. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 694. A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). Appellate review of defense counsel's performance is highly deferential, and we presume that counsel's actions fell within the wide range of reasonable and professional assistance. *Strickland,* 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd).

To overcome this presumption, Appellant's claim of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.* at 813–14. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v.*

*State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). If trial counsel has not had an opportunity to explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in them. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

In Appellant's sixth issue, he asserts that trial counsel provided ineffective assistance because trial counsel failed to request a hearing on the motion for new trial. Trial counsel filed the motion for new trial on January 6, 2017. As addressed in Appellant's first issue above, Appellant argued that a new trial was required because of the State's use of Neatherlin's allegedly false testimony, newly discovered evidence, and insufficient evidence. Trial counsel, however, did not request a hearing on the motion. The motion was then overruled by operation of law.

Even if we assume that trial counsel was deficient in not requesting a hearing, we conclude that trial counsel's performance did not prejudice Appellant. The second prong of *Strickland* requires that an appellant show prejudice that resulted from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must prove that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *See Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceedings." *Id.*

As we discussed in Appellant's first issue, even if we assume that trial counsel requested a hearing and presented actual evidence of Neatherlin's false testimony and the newly discovered evidence, we cannot conclude that the trial court erred when it denied Appellant's motion. Because Neatherlin's allegedly false testimony

was not material to the jury's verdict and only served to impeach Neatherlin's testimony in general, there is no reasonable probability that the result of the proceeding would have been different had trial counsel requested a hearing on the motion. Accordingly, we overrule Appellant's sixth issue.

In Appellant's seventh issue, he contends that he received ineffective assistance of counsel for two additional reasons. First, Appellant claims that he received ineffective assistance because trial counsel failed to assert a Confrontation Clause objection to Dr. Roe's testimony regarding the anthropologist's report or the admission of the report itself (contained within State's Exhibit No. 188). Appellant claims that trial counsel should have asserted these objections because Dr. Roe "did not sign the [anthropologist's report] or perform or observe the anthropology exam." *See Burch v. State*, 401 S.W.3d 634, 638, 640 (Tex. Crim. App. 2013) (holding that the Confrontation Clause was violated when the testifying witness averred directly about the conclusions of a non-testifying expert's report). Such "surrogate testimony," Appellant argues, "violated the Confrontation Clause and [his] right to confront the anthropologist."

The appellate record, however, does not contain an explanation from trial counsel about his failure to assert a Confrontation Clause objection. Because trial counsel has had no opportunity to explain his reasoning for his actions, or lack thereof, we must assume that he had a strategic motivation for his conduct, if any such motivation can be imagined. *Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001). As the Court of Criminal Appeals explained in *Menefield*, in regard to the admission of a laboratory report, "[w]e do not know why counsel failed to raise a Confrontation Clause objection." 363 S.W.3d at 593. "[P]erhaps the State could (and with an objection would) have brought [the report's author] to the courtroom to testify, and counsel realized that cross-examining [him] would not benefit his client." *Id.* Here, because the record is silent as to why trial counsel failed to object

28

under the Confrontation Clause, Appellant has not overcome the strong presumption that counsel's conduct was reasonable.

Second, Appellant argues that he received ineffective assistance because trial counsel failed to object under Rule 705(d) of the Texas Rules of Evidence or request a limiting instruction to testimony about the anthropology report and the report itself. Appellant argues that, because the anthropologist's report constituted inadmissible hearsay, "the trial court should not have allowed the medical examiner to testify regarding the anthropology report or allowed the State to introduce the anthropology report into evidence without conducting the balancing test required under Rule 705(d)." Moreover, he claims that trial counsel should have requested a limiting instruction "to limit this evidence's impact and influence on the jury's deliberation and ultimate verdict." *Id.*

Although trial counsel did not object under Rule 705(d), he did object to hearsay under Rule 802. After the trial court overruled his objection, Appellant's trial counsel may have reasonably believed that any further objections to the anthropologist's report would have been futile. In doing so, he may have adopted the trial strategy to not further object to the report because additional objections would have emphasized the evidence. It is also reasonable to conclude that, after the trial court overruled his hearsay objection, trial counsel decided that seeking a limiting instruction would only bring further attention to the report. The record, however, is silent as to trial counsel's true motivations. Thus, on this record, we cannot conclude that trial counsel's failure to object under Rule 705(d) or to seek a limiting instruction fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 813

Therefore, we hold that nothing in the record demonstrates that Appellant's trial counsel rendered ineffective assistance when he failed to object under either the Confrontation Clause or Rule 705(d), or request a limiting instruction. Moreover,

trial counsel's actions were not so outrageous that no competent attorney would have engaged in them. *See Goodspeed*, 187 S.W.3d at 392. We overrule Appellant's seventh issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


December 21, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Wright, S.C.J.,[6] and Judge Satterwhite.[7]

Willson, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

[7]Rodney W. Satterwhite, 441st District Court, Midland, sitting by assignment.